UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE DeFELICE,

    Plaintiff,

                                      Civil No. 08-14734
                                      District Judge Denise Page Hood

v.

HERITAGE ANIMAL HOSPITAL, INC.,
a Michigan corporation, EARL D. CORNPROBST
and CHERYL A. CORNPROBST

    Defendants.
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Motion in Limine to Exclude Evidence of Compensatory and Consequential Damages Under ERISA **[Docket No. 71, filed on January 19, 2010]**. This matter is also before the Court on Defendants' Motion in Limine to Exclude Evidence of Front Pay Damages and to Limit Evidence of Back Pay Damages, if any **[Docket No. 72, filed on January 19, 2010]**. Plaintiff responded to both motions on February 11, 2010 **[Docket No. 76]**, to which Defendants replied **[Docket No. 77, filed on March 3, 2010]**.

This matter is also before the Court on Plaintiff Nicole DeFelice's Motion in Limine to Exclude Evidence Relating to "Rehab Business Proposal" Made to DeFelice by Advanced Veterinary Care Group **[Docket No. 74]**. Defendants' filed a response on February 5, 2010 **[Docket No. 75]**. No reply was filed.

**II.    STATEMENT OF FACTS**

1

Plaintiff Nicole DeFelice is a Licensed Veterinary Technician [LVT] and Certified Canine Rehabilitation Practitioner [CCRP]. On or around July 2006, Defendants C. Cornprobst and E. Cornprobst, co-owners of Heritage, opened Heritage. Plaintiff began working for Defendant Heritage Hospital ("Heritage") on or around July 1, 2006. She began her employment as a salaried LVT and CCRP, earning $35,360 per year. In April 2007, she was switched to an hourly rate of $17.00. To the extent she was eligible, Plaintiff could receive health care benefits, pet care discounts, continuing education reimbursement, a uniform allowance, and 8% of the profits of Heritage's rehabilitation business.

Plaintiff was terminated from Heritage on April 18, 2008. On October 8, 2008, less than two months after her termination, Plaintiff took a position with Advanced Veterinary Care Group ("Advanced"). She describes this position as "comparable, alternative employment." Plaintiff's Motion in Limine, at 2. Her hourly wage was $19.00 per hour, and she was offered health insurance, dental and vision insurance, short and long term disability insurance, life insurance, a 401k, and pet care discounts.

On or around July 22, 2009, Plaintiff was laid off from Advanced. At that time, Advanced offered Plaintiff a Rehab Business Proposal in which Plaintiff would rent equipment and space from Advanced, and take in all revenue generated, less a usage fee payable to Advanced. Plaintiff rejected this proposal.

Plaintiff provided Defendants with a list of job searches done prior to her being hired by Advanced. She also provided a list of her job searches after her layoff, through September 1, 2009. The list contains two attempts to find employment. In July, Plaintiff applied to the nursing program at Monroe Community College, where she was accepted and began classes on September 1, 2009.

2

## III. APPLICABLE LAW & ANALYSIS

### A. FRONT PAY DAMAGES

The Sixth Circuit has "previously held that reinstatement is the presumptively favored remedy." *Roush v. KFC Nat. Management Co.*, 10 F.3d 392, 398 (6th Cir. 1993). "However, while reinstatement should be granted in the ordinary case , it is an equitable remedy which is not appropriate in every case, such as where the plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result." *Id.* Defendants and Plaintiff agree that reinstatement would not be a viable remedy in this case.

Front pay is compensation for the post-judgment effects of past discrimination. *See Shore v. Federal Exp. Corp.*, 777 F.2d 1155, 1158 (6th Cir. 1993). "Front pay is awarded only when the preferred remedy of reinstatement, indisputably an equitable remedy, is not appropriate or feasible." *Schwartz v. Gregori*, 45 3d 1017m 1023. "[A]n award of front pay must be governed by the sound discretion of the trial court and may not be a appropriate in all cases." *Davis v. Combustion Engineering, Inc.*, 742 F.2d 916, 923 (6th Cir. 1984). In other words, a plaintiff is not automatically entitled to front pay if reinstatement is not a viable remedy.

"Front pay is transitional relief 'designed to assist the Plaintiff during the period in which he can be expected to find other employment.'" *Evanoff v. Banner Mattress Co., Inc.*, 2009 WL 1707868, *2 quoting Bailey v. Container Corp. of America*, 660 F.Supp 1048, 1054 (S.D. Ohio 1986). In *Evanoff,* the court instructed that front pay "is not intended to insure plaintiff against *subsequent* changes in employment." *Id.* The court found that, because plaintiff was able to find interim employment, he was not entitled to front-pay damages. *See id.*

Defendant argues that Plaintiff secured comparable employment within two months of

her termination from Heritage. Even though Plaintiff had slightly fewer hours at Advanced, she earned $19.00 per hour, rather than the $17.00 she was earning at Heritage. Defendant also argues that her benefits at Advanced were slightly better than at Heritage. Front pay, in this case, would be insuring Plaintiff against a subsequent change in employment, and is inappropriate.

Defendant argues that Plaintiff failed to mitigate her damages by rejecting the Rehab Business Proposal. As discussed below, this Court does not find that Plaintiff's rejection of the proposal amounted to a failure to mitigate damages. However, the Court recognizes that Plaintiff opted to pursue a nursing degree. Plaintiff's choice to pursue a college degree in another area does not entitle her to front pay, as she chose to discontinue efforts to mitigate her damages. *See Shore v. Federal Exp. Corp.*, 777 F.2d 1155, 1160 (6th Cir. 1985) ("However desirable a college education may be, we cannot impose this cost on the defendant in this case.")

Evidence of front pay damages must be excluded.

### B. BACK PAY DAMAGES

Defendant argues that, if Plaintiff succeeds in establishing liability for back pay, the calculation of back pay should begin on the day Plaintiff was terminated, and end on the day Plaintiff found full-time employment elsewhere. Plaintiff argues that, since her position at Advanced provided her fewer hours, and her commission was less, her actual earnings were slightly less than what she would have earned had she remained employed by Heritage.

Defendants cite to cases in which the district court decided to end the period of back pay at the time the plaintiff found comparable employment. *See Cross v. National Trust Life Ins. Co.*, 553 F2d 1026 (6th Cir. 1977); *see also Rimedio v. Revlon, Inc.*, 528 F. Supp. 1380 (S.D. Ohio 1982). Plaintiff distinguishes her case from those cited by Defendants, stating that she was

4

unable to find a job that compensated her for the same number of hours as Heritage, and that she was laid off from the higher paying employment through no fault of her own. Citing a case from the First Circuit, *Johnson v. Spencer Press of Maine, Inc.*, Plaintiff appears to argue that the period of back pay should end at the time of judgment. 364 F3d 368, 382 (1st Cir. 2004).

In the Sixth Circuit, "[p]ursuant to the "make whole" purposes of such relief, the general rule is to award back pay through the day of judgment." *Suggs v. Servicemaster Education Food Management*, 72 F.3d 1228 (6th Cir. 1996). The back pay is offset by the amount earned in the interim. *See, e.g., Hance v. Norfolk Southern Railroad Company*, 571 F.3d 511, 521 (6th Cir. 2009) ("Although prevailing plaintiffs in employment discrimination cases are presumptively entitled to back pay until the date judgment has been entered in the case, back-pay should make a plaintiff whole, not better off."); *see also Suggs*, 72 F.3d at 1234, n.2 (calculating back pay by the amount of salary plaintiff would have earned from the date of termination through the date of trial, less what she had earned during that period).

Given the general rule in the Sixth Circuit, the Court will not limit back to pay from the day Plaintiff was terminated to the day Plaintiff found full-time employment elsewhere.

### C. COMPENSATORY AND CONSEQUENTIAL DAMAGES

Defendant argues, and Plaintiff appears to concede, that compensatory and consequential damages are not allowed under ERISA. Indeed, "[i]t is well established that extracontractual compensatory and punitive damages are not available under ERISA." *Vargas v. Child Development Council of Franklin County, Inc.*, 269 F.Supp.2d 954, 956 (S.D. Ohio 2003). *See also, e.g., McDonald v. Household Inter., Inc.,* 425 F.3d 424, 430 (7th Cir. 2005) (agreeing that plaintiff cannot recover consequential damages in an ERISA action).

Given that this Court has held that Plaintiff's Michigan Whistleblower's Protection Act

(WPA) claim is preempted by ERISA, the issue of compensatory and consequential damages on this claim is moot.

Plaintiff argues that, although compensatory damages for mental and emotion distress are not generally recoverable for breach of contract, compensatory or consequential damages may be sought if the parties reasonably contemplated that mental anguish or consequential damages would occur as a natural consequence of the breach. *See Kewin v. Massachusetts Mutual Life Insurance Co.*, 409 Mich. 401, 419 (1980) (the mere breach of a commercial contract does not give rise to a right to recover damages for mental distress, unless those damages "can reasonably be said to have been in contemplation of the parties at the time the contract was made."). Plaintiff states that, given the personal nature of her employment contract with Defendants, the parties contemplated that Plaintiff would suffer mental anguish or other consequential damages if the contract was breached.

In Michigan, damages for emotion distress are not recoverable in an action for an employment contract breach. *Stopczynski v. Ford Motor Co.*, 200 Mich. App. 190, 197 (1993). *See also Dahlman v. Oakland University*, 172 Mich.App. 502, 508 (1988). Defendants highlight a case in which the breach of the defendants contract to perform a Caesarean section, which allegedly caused plaintiff's child to be stillborn. In this case, the court said "[i]t is true, in the ordinary commercial contract, damages are not recoverable for disappointment, even amounting to alleged anguish because of breach. In such cases breach of contract may cause worry and anxiety varying in degree and kind . . . but it has been long settled that recovery therefor was not contemplated by the parties as the 'natural and probable' result of the breach." *Stewart v. Rudner*, 349 Mich 450, 469 (1957). The court goes on to find that some contracts involve "rights we cherish, dignities we respect, emotions recognized by all as both sacred and

6

personal," and damages for mental distress and suffering are appropriate. *Id.* The alleged breach of contract in Plaintiff's case may have caused anxiety and worry, but cannot be said to fit into the narrow exception of cases in which damages for mental distress and suffering are appropriate.

Evidence of consequential or compensatory damages must be excluded.

### D. "REHAB BUSINESS PROPOSAL"

After Plaintiff was laid off from Advanced, she was presented with a Rehab Business Proposal ("business proposal" or "proposal"). Plaintiff alleges that the Rehab Business is the same business at which Advanced had failed. Plaintiff states that she would have had to take on certain risks and expenses, including payment of the equipment costs, rent, and a usage fee to cover utilities, staff support, and miscellaneous expenses. Plaintiff decided not to accept the proposal.

Defendants argue that Plaintiff's failure to accept Advanced's business proposal constitutes a failure to mitigate damages. Defendants argues that Plaintiff worked to build the rehabilitation practice at Heritage. They fail to note that, even though she was receiving 8% of the rehabilitation department's profits, she still was receiving either a salary or hourly wage. Defendants also argue that it was unreasonable for Plaintiff to reject the offer when, shortly thereafter, a Heritage employee accepted Advanced's Business Proposal.

Defendants have not cited any case in which a decision not to become self-employed or start a business constituted a failure to mitigate. To the contrary, the cases which Defendants cite stand for the proposition that, in certain circumstances, self-employment *may* be a reasonable alternative to finding comparable employment. *See, e.g., Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1005 (3rd Cir. 1998) ("a self-employed person is 'employed' for the

7

purposes of mitigating damages if establishing a business of his own was a reasonable alternative to finding other comparable employment.").

This Court finds that Plaintiff was not obligated to accept a business proposal in order to mitigate her damages. There is no legal authority requiring a plaintiff to go into business for herself in order to mitigate damages. That another individual chose to accept the proposal does not mean that it was unreasonable for Plaintiff to reject it. While Defendants may make other arguments about her post-Advanced efforts to mitigate damages, such as her limited job inquiries or her decision to go to nursing school rather than to continue looking for comparable employment, the proposal is not relevant to her efforts to mitigate damages.

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 states that "all relevant evidence is admissible, except as otherwise provided..." and "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. The Rules further provide that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Even if relevant, evidence of the proposal would still be admissible with respect to Plaintiff's efforts to mitigate damages, as its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

The proposal may not be admitted for the purpose of demonstrating Plaintiff's failure to mitigate damages.

## IV. CONCLUSION

**IT IS ORDERED** that Defendants' Motion in Limine to Exclude Evidence of Compensatory and Consequential Damages Under ERISA **[Docket No. 71, filed on January 19, 2010]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine to Exclude Evidence of Front Pay Damages and to Limit Evidence of Back Pay Damages, if any **[Docket No. 72, filed on January 19, 2010]** is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Nicole DeFelice's Motion in Limine to Exclude Evidence Relating to "Rehab Business Proposal" Made to DeFelice by Advanced Veterinary Care Group **[Docket No. 74]** is **GRANTED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 29, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager