UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NICOLE DeFELICE,

    Plaintiff,

                                                             Civil No. 08-14734
                                                             District Judge Denise Page Hood
v.

HERITAGE ANIMAL HOSPITAL, INC.,
a Michigan corporation, EARL D. CORNPROBST
and CHERYL A. CORNPROBST,

    Defendants.
_____/

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment **[Docket No. 52, filed on October 15, 2009]**. Plaintiff filed a response on November 5, 2009 **[Docket No. 59]**, to which Defendants filed a reply **[Docket No. 64, filed on November 12, 2009]**.

**II.    STATEMENT OF FACTS**

Plaintiff was employed by Defendant Heritage Animal Hospital, Inc. ("Heritage" or "HAH") as a Licensed Veterinary Technician ("LVT") and Certified Canine Rehabilitation Practitioner ("CCRP"). Heritage is owned by Defendants Earl Cornprobst ("E. Cornprobst") and Cheryl Cornprobst ("C. Cornprobst"). Heritage established a retirement savings program under ERISA, called the Simple IRA Plan ("Simple IRA" or "Plan"). Employees made contributions through payroll deductions, which were matched up to 3%. Plaintiff participated in the Plan, withholding $70.00 each bi-weekly pay period. Each quarter, C. Cornprobst wrote checks for

1

the employee and matching employer contributions, and sent the checks to Skotynsky Financial Group, LLC. Defendants maintain that, through an oversight, employee contributions were not sent to the fund custodian from January 1, 2008 through July 31, 2008. Plaintiff maintains the funds were purposely used during this time to pay other bills. In any event, the employee contributions were paid with the personal funds of E. Cornprobst or C. Cornprobst around August 1, 2008. Heritage also paid matching employer contributions of 3% instead of the 1% owed to participants under the Plan.

On August 4, 2008, C. Cornprobst requested a meeting with Plaintiff to discuss the IRA issue, although Defendants maintain that very little time was spent discussing the IRA issue. On August 8, 2008, Plaintiff went to the Monroe County Sheriff's office to report the Defendants' violation. On August 18, 2008, Plaintiff was terminated from Heritage.

Plaintiff maintains that her termination from Heritage was retaliation for her complaining and objecting to the Cornprobsts' violation. Defendants state that the termination had nothing to do with Plaintiff's conduct regarding the ERISA violation, but rather cite a host of reasons that Defendants were not pleased with Plaintiff's work performance, including interaction with other staff members, and inappropriate behavior while at work. Defendants now seek summary judgment on the following issues: 1) Plaintiff's ability to prove a genuine issue of material fact with regard to her claims under § 501 of ERISA; 2) Plaintiff's ability to impose personal liability on the Cornprobsts; 3) Plaintiff's ability to prove a genuine issue of material fact exists with regard to her claim under the Michigan Whistleblowers' Protection Act; and 4) Plaintiff's ability to prove a genuine issue of material fact with regard to her breach of contract claim.

### III. STANDARD OF REVIEW

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be clear from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV.    APPLICABLE LAW & ANALYSIS

### A.    Section 510 of ERISA

Plaintiff alleges that she was discharged in retaliation for: 1) exercising rights under ERISA; and 2) for the unlawful purpose of interfering with her attainment rights under the Simple IRA, in violation of Section 510 of the ERISA statute. *See* Complaint ¶ 21. Section 510 of ERISA provides, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . . It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding related to this chapter. 29 U.S.C. § 1140.

#### 1.    Retaliation

Plaintiff may establish a prima facie case of retaliation under § 501 by proving: 1) she was engaged in activity that ERISA protects; (2) there was an adverse employment action; and

3

(3) a causal link exists between the protected activity and the adverse employment action." *Cooper v. City of North Olmstead*, 795 F.2d 1265 (6th Cir. 1986). Once a plaintiff has established a prima facie case, the employer may offer a legitimate reason for the adverse employment action and overcome any presumption of retaliation. The burden then shifts to the Plaintiff to demonstrate why the reason offered is mere pretext for a retaliatory action. *Hamilton v. General Electric Co.*, 556, F.3d 428, 435 (6th Cir. 2009).

### a. Protected Activity

In this case, Plaintiff argues that her actions of voicing and pursuing internal complaints concerning the Defendants' violation of the Simple IRA and ERISA, and giving information regarding the same to law enforcement authorities constitute protected activity under ERISA. Defendants argue that Plaintiff was not engaged in protected activity because she was not the first employee to discover or raise the issue with the Cornprobsts, and therefore was not a "whistleblower." Defendants provide a number of citations to cases in which informal internal complaints constituted protected activity, and note that in each of the cases cited, the Plaintiff was the person who first raised the issue with management. *See, e.g., Anderson v. Electronic Data Corp.*, 11 F.3d 1311 (5th Cir. 1994); *Hashimoto v. Bank of Hawaii*, 999 F.2d 408 (9th Cir. 1993); *Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325 (2nd Cir. 2005); and *Dunn v. Elco Enterprises*, *Inc.*, 2006 WL 1195867 (E.D. Mich. 2006). However, Defendants cite no legal authority supporting the proposition that Plaintiff *must* be the first person to report an issue or complain in order to participate in protected activity as contemplated by the ERISA statute. It is undisputed that Plaintiff was the most outspoken about the failure to make payments into the fund. Further, Plaintiff has presented evidence supporting her contention that she gave

information regarding the violation to law enforcement.

Defendants also argue that Plaintiff was not involved in protected activity because Plaintiff's mere act of complaining or objecting the activity was not part of an inquiry, and therefore did not rise to the level of protected activity. In support of this argument, Defendants cite *Edwards v. A.H. Cornell and Son, Inc.*, 2009 WL 2215074, *3 (E.D. Pa., 2009). Defendant argues that, because Plaintiff does not allege that anyone requested information from her or initiated contact with her in any way regarding the alleged ERISA violations, the circumstances under which information was given did not constitute an inquiry. Defendants allege that C. Cornprobst scheduled a meeting with each employee to apologize and explain what occurred, and Plaintiff did not give any information regarding the violation to C. Cornprobst. Regardless of whether C. Cornprobst met with every other employee, she still requested the meeting with Plaintiff. Plaintiff produced a transcript of the meeting, which she had tape-recorded with C. Cornprobst's permission, indicating that the meeting consisted of more than C.Cornprobst merely explaining and apologizing for what had occurred. C. Cornprobst asked Plaintiff questions about how to handle the consequences of the violation, to which Plaintiff provided answers. *See Brief in Opposition to Defendants' Motion for Summary Judgment*, at 20-21. For the foregoing reasons, Defendants have failed to show that they are entitled to summary judgment as a matter of law.

    b.  **Adverse Employment Action**

Neither party disputes that Plaintiff's termination constitutes an adverse employment action. This element is met.

    c.  **Causal Connection**

Defendants contend that, even if Plaintiff's meeting with law enforcement constitutes protected activity, there could be no causal connection to her termination because Defendants were unaware of this meeting at the time Plaintiff was terminated. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 n.3 (6th Cir. 1999)(en banc)(". . .the defendant must have known about the protected activity in order for it to have motivated the adverse action."). Plaintiff offers the sworn testimony of Heritage Office Manager Shan Bogedain to demonstrate that a co-worker, Jenelle Hephner, told Bogedain that Plaintiff was trying to persuade her to take legal action at a dinner that occurred on August 6, 2008. Bogedain Deposition at 13, 66. The affidavit of co-worker Roxanne Pfeifer states that, at the same dinner, "Nicole DeFelice disclosed, as I had suspected, that she was the one who had taped the meetings with Cheryl Cornprobst and was contemplating taking some legal action to report or challenge that Hospital's failure to transmit the contributions." Affidavit of Pfeiffer at ¶ 8 , Ex. D. to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment. This sworn testimony creates a genuine issue of material fact as to whether management was alerted to DeFelice's plan to meet with, or that she actually met with, law enforcement such that summary judgment on this issue of causal connection would be inappropriate.

Plaintiff cites the close temporal proximity, two and a-half weeks, between her protected activity and her termination as indicative of a causal connection between the two.

> Although no one factor is dispositive in establishing a causal connection, evidence that the adverse action was taken shortly after a plaintiff's exercise of protected rights is relevant to causation. Indeed, some cases suggest that proximity alone – if covering a short time span – may suffice to show causation. Sixth Circuit law on this particular point is far from uniform, however, with other cases suggesting proximity alone may never be enough to show causation.

6

*Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 629 (6th Cir. 2008). While the temporal proximity may not be dispositive in this Circuit, the close temporal proximity between the alleged exercise of protected activity and Plaintiff's termination, taken together with the above-discussed factors, render summary judgment improper.

          **d.**      **Legitimate, Non-Discriminatory Reasons/Pretext**

Defendants assert many non-retaliatory reasons for terminating Plaintiff. E. Cornprobst testified that Plaintiff's termination was, *inter alia*, due to "her attitude, and the staff making comments about her lack of willingness to help, she was no longer a team player." Deposition of E.Cornprobst at 47:22-24. He also testified that "he was aware that she was cheating on the time clock quite a bit." Deposition of E. Cornprobst at 48:1-2. Defendants have offered legitimate, non-discriminatory reasons for Plaintiff's discharge.

Despite Defendants having offered these legitimate, non-discriminatory reasons for the termination of Plaintiff, summary judgment is improper on this issue. Plaintiff refers to her termination letter, which does not cite Defendants' proffered legitimate, non-discriminatory reasons for termination. Instead, it cites "her negative impact on staff moral [sic] over the last few months" and there being no "reasonable chance of restoring the employee/employer relationship to a level of mutual trust and respect." Termination Letter, Ex. 6 to Deposition of E. Cornprobst. Plaintiff has created a genuine issue of material fact as to whether Defendants' legitimate, non-discriminatory reasons are mere pretext.

          **2.**      **Interference Claim**

Defendants argue that Plaintiff cannot establish an interference claim under § 501. "This provision of ERISA is aimed primarily at preventing unscrupulous employers from discharging

or harassing their employees in order to keep them from obtaining vested pension rights." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 455 (6th Cir. 2003) (internal quotations omitted). To establish "a prima facie case under § 510, an employee must show that there was: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Id.* (internal quotations omitted). Plaintiff has not put forth any evidence to establish a prima facie case, nor does she argue an interference claim in her response to Defendants' motion for summary judgment. Defendants have demonstrated that there is no genuine issue of material fact on this issue, and that they are entitled to summary judgment as a matter of law.

### B. Personal Liability on E. Cornprobst and Cheryl Cornprobst

The elements of a claim for breach of contract under ERISA are "1) that the defendants are plan fiduciaries; 2) that the defendants breached their fiduciary duties; and 3) that the breach caused harm to the plaintiff." *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). An individual only has standing to seek a remedy for breach of fiduciary duty for the breach of an ERISA plan if that breach actually impairs the value of plan assets in a participant's individual account. *See LaRue v. DeWolff, Boberg, & Associates, Inc., et al.*, 128 S.Ct. 1020, 1024 (2008). Otherwise, an individual only has standing to seek a remedy if they are making claims on behalf of the entire plan. *See Loren v. Blue Cross & Blue Shield of Michigan*, 505 F.3d 598 (6th Cir. 2007).

Defendants argue that, even if they had breached fiduciary duties to Plaintiff, Plaintiff is unable to show that the breach has impaired the value of the assets in her individual account. They argue that Plaintiff would not be able to impose personal liability on E. Cornprobst and C.

Cornprobst, as she is unable to demonstrate that her Simple IRA account would have sustained a loss due to the breach. Plaintiff has not provided any evidence that her account has sustained a loss, or that the value of the assets in her individual account have been impaired. Defendants cited Plaintiff's deposition testimony that her account sustained a loss. Deposition of DeFelice at 170-174.

Plaintiff argues that there is a question of material fact as to whether Defendants received a benefit from the breach, which would also entitle her to recovery if all other elements were met. However, Plaintiff provides no evidence in support of the contention that Defendants gained from the alleged breach. Plaintiff provides no evidence that Defendants received a financial benefit by committing the alleged breach. Defendants provide, via affidavit, evidence that Heritage gained no profit and sustained a loss during the period of August 2007 through July 2008. Affidavit of C. Cornprobst, ¶ 5 [Docket No. 63, November 12, 2009]. Plaintiff has demonstrated no genuine issue of material fact on this issue. Summary judgment is appropriate on this issue.

### C. Michigan Whistleblowers' Protection Act

Defendants argue that Plaintiff's claim under the WPA is preempted by ERISA. ERISA preemption is broad. The Sixth Circuit has recognized that "ERISA preempts state law and state law claims that 'relate to' any employee benefit plan as that term is defined [in the statute] . . ." and "'relate to' is given broad meaning such that a state law cause of action is preempted if 'it has connection with or reference to that plan.'" *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 *quoting* "Any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to

9

make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health*, *Inc. v. Davila*, 542 U.S. 200, 209 (2004).

Plaintiff argues that preemption should not apply to her case because ERISA makes it unlawful for an employer to retaliate against an employee because she has participated in an internal informal gathering of information, while the WPA relates only to reports to external entities. While Plaintiff cites numerous cases establishing that the WPA applies only to external reporting, there is no legal authority supporting the proposition that § 510 applies only to internal inquiries. *See Dudewicz v. Norris Schmid, Inc.*, 443 Mich. 68 (1993); *Heckmann v. Detroit Police Chief*, 267 Mich. App. 480 (2005); *Dickson v. Oakland University*, 171 Mich. App. 68 (1988); *Jennings v. County of Washtenaw*, 475 F.Supp.2d 692 (E.D. Mich. 2007). Nothing in a plain reading of the statute would indicate that it applies only to internal inquiries.

In *Hashimoto v. Bank of Hawaii*, the Ninth Circuit found the state whistleblower statute, which applied to reporting of violations of state or federal law to a public body, to be preempted by ERISA § 510, in part because "plaintiff's claim would require an interpretation of the ERISA plans as to which she raised her objections about the Bank's fulfillment of its fiduciary obligations" and "some interpretation of ERISA would probably be required." 999 F.2d 408, 411 (9th Cir. 1993). The Court did not preclude the state whistleblower statute from being preempted due to its requirement of reporting to a public body.

Plaintiff next argues that Defendants have waived their preemption defense, as it is an affirmative defense, and Defendants failed to assert it in their answer. In the Sixth Circuit, "failure to raise an affirmative defense by responsive pleading does not always result in waiver of the defense– such as, when the plaintiff receives notice of the affirmative defense by some

10

other means." *Seals v. General Motors Corp.*, 546 F.3d 776, 770-771 (6th Cir. 2008). Defendants contend that the "other means" by which Plaintiff was notified was Defendants' Motion for Summary Judgment, to which Plaintiff had an opportunity to respond.

Under Fed. R. Civ. P. 15(a)(2), the court should freely give leave to a party to amend its pleading "when justice so requires." "Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals*, 546 F.3d at 770. In this case, there is no indication of bad faith by the moving party, no subsequent amendments in which Defendants failed to cure the deficiency, and no lack of notice or undue prejudice to the opposing party. The Court grants Defendants' request for leave to amend its Answer to include the affirmative defense of ERISA preemption. Defendants are entitled to summary judgment on the Plaintiff's WPA claim, as it is preempted by ERISA. *See, e.g., Merriken v. American Maritime Officers Vacation Plan*, 2008 WL 4899126 (S.D.Fla. 2008)(state-law whistleblower claim was preempted by ERISA); *McSharry v. Unumprovident Co.*, 237 F.Supp.2d 875, 880 (Because "claims depend upon the existence of ERISA plans and alleged violations of fiduciary duties imposed by ERISA [plaintiff's] claims 'relate to' ERISA plans within the meaning of § 1144(a)," and state-law whistleblower claim was preempted by ERISA.); *see also McClean v. Carlson Companies, Inc.*, 777 F.Supp. 1480 (D.Minn. 1991).

      **D.**      **Breach of Contract**

Defendants maintain that the "Position Offer" Plaintiff claims requires cause before termination simply does not. Plaintiff argues that provisions within the contract are sufficient to

11

overcome the presumption that Plaintiff was an at-will employee. *See Rowe v. Montgomery Ward*, 437 Mich. 627, 636 (1991) ("[t]he presumption [in favor of employment at will] may be overcome by proof of an express contract for a definite term or a provision forbidding discharge in the absence of just cause . . .") The Position Offer reads, in relevant part,

> This employment agreement does not constitute a contract of any specified length of time. At any time that Nicole is not satisfied with her employment under HAH or HAH is not satisfied with Nicole's work performance or client/staff relationship then this employment agreement becomes null and void. However this does constitute a bilateral agreement that both parties will abide by as long as Nicole is employed with HAH. The owners of HAH will make every reasonable effort to properly train, evaluate, and guide employees in pursuit of successfully performing their job duties . . . .The owners further agree to be fair in making the employees aware of any issues that may lead to their dismissal. However in the event of any major infraction of performance or persistent failure to correct faults the owners may exercise their rights under the Michigan Labor Laws that pertain to "At Will" dismissals.

Ex. A to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment.

Under Michigan law, contracts are "subject to the parole evidence rule, which prohibits the use of extrinsic evidence to interpret unambiguous language in a contract document." *Shay v. Aldrich*, __ N.W.2d __, 2010 WL 3326673, *8 (Mich. 2010). Plaintiff argues that factual issues abound with respect to the meaning of the contractual contracts, and whether they were breached. An ambiguity may be patent, appearing on the face of the document, or latent, which "does not readily appear in the language of a document, but instead arises from a collateral matter when the the document's terms are applied or executed." *Id*. at *9. This Court agrees that the contract language contains ambiguous language, rendering summary judgment on this issue inappropriate.

*See Klapp v. United Ins. Group Agency*, 468 Mich. 459, 469 (2003)("It is well settled that the

meaning of an ambiguous contract is a question of fact that must be decided by the jury.")

## V. CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **[Docket No. 52, filed on October 15, 2009]** is GRANTED in part (with respect to the WPA claim, the personal liability of the Cornprobsts, and the § 501 interference claim), and DENIED in part (with respect to the § 501 retaliation claim and the breach of contract claim).


                                                   S/Denise Page Hood
                                                   Denise Page Hood
                                                   United States District Judge

Dated: September 29, 2010

     I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2010, by electronic and/or ordinary mail.

                                                   S/William F. Lewis
                                                 Case Manager